UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE JESUS CARBAJAL,<br>Defendant. | Case No. 1:17-cr-00304-JLT-SAB-1<br><br>ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 |

## I. INTRODUCTION

Jose Jesus Carbajal is a federal prisoner proceeding through retained counsel on a 28 U.S.C. § 2255 motion filed on March 12, 2024, seeking to vacate, set aside, or correct the sentence imposed following his conviction by a jury on crimes related to two robberies. (Doc. 150). The § 2255 motion asserts ineffective assistance of counsel by defense co-counsel Robert Forkner leading to a breakdown in the attorney-client relationship, Carbajal's rejection of a favorable plea offer and abandonment by Forkner during the trial phase leaving defense co-counsel Jai Gohel to try the case alone.

The government opposes the motion.[1] (Docs. 168, 169, 169-1). For reasons set forth below, the Court DENIES the motion and declines to issue a certificate of appealability.

[1] The opposition includes a declaration from Carbajal's trial counsel, Mr. Gohel. The Court granted partial waiver of privileges as to Gohel. (Doc. 178).

## II. BACKGROUND

In 2017, Carbajal was indicted on charges of Conspiracy to Commit Hobbs Act Robbery (18 U.S.C. § 1951) Count One, Interference with Commerce by Robbery (18 U.S.C. § 1951) Count Two, and Using, Carrying, or Brandishing a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)(A)) Count Three. (Docs. 6, 6-1). At the arraignment in late 2017, Robert Forkner appeared for Carbajal as his retained counsel. (Doc. 9) Carbajal pleaded not guilty (Doc. 7). On January 9, 2019, Jai Gohel associated into the case, after Carbajal's family retained him on Carbajal's behalf and upon his agreement. (Doc. 16).

In early 2019, the government extended a plea offer. It required Carbajal to plead guilty to Counts Two and Three and waive his appellate and collateral attack rights, in exchange for the government dismissing the remaining Count and recommending a downward variance for acceptance of responsibility and a sentence within the Guideline ranges. (Doc. 150-2). In July 2019, Carbajal was charged by a superseding indictment. (Docs. 25, 25-1). On July 29, 2019, Carbajal was arraigned on the superseding indictment (Doc.41) and pleaded not guilty, rejecting the plea deal. (Doc. 82 at 7). Carbajal went to trial, with Gohel representing him, after Carbajal decided that he did not wish Forkner to represent him at trial. (Doc. 169 at 7). On August 1, 2019, Carbajal was found guilty by a jury of violating Counts One, Two, and Three. (*See* Doc. 150-7 at 1).

The 2019 Pre-Sentencing Report calculated the total offense level at 37 and the criminal history at category VI and recommended the statutorily authorized maximum sentence of 324 months in custody (i.e. 240 months on each of Counts One and Two and 84 months consecutive on Count Three). (*See* sealed Doc. 61 at 4, 22, 26). Carbajal requested a sentence of 240 months in custody (i.e. 156 months on each of Counts One and Two and 84 months consecutive on Count Three). (Doc. 64 at 3).

On January 13, 2020, the Court sentenced Carbajal pursuant to the 2018 U.S. Sentencing Guidelines to a total 292 months in custody followed by 60 months of supervised release. (Doc. 67; Doc. 150-10 at 3). The Court entered judgment that same day. (Doc. 70). Carbajal appealed the judgment (Doc. 69), and on August 4, 2021, the Ninth Circuit affirmed the conviction, vacated the sentence, and remanded the matter for resentencing. (Doc. 105 [Memorandum, Case No. 20-10025]).

The 2023 PSR calculated a total offense level of 36 and a criminal history category of VI and recommended 408 months in custody (i.e. a Guideline range of 324 to 405 months on each of Counts One and Two, along with 84 months consecutive on Count Three). (Sealed Doc. 136 at 9, 12, 16, 23; Doc. 136-3). Carbajal requested a sentence of between 120-180 months in custody. (Doc. 150-8 at 4). The government requested a sentence of 292 months in custody. (Doc. 143 at 1). On March 13, 2023, the Court resentenced Carbajal pursuant to the 2021 U.S. Sentencing Guidelines to a total 274 months in custody, followed by 60 months of supervised release. (Docs. 145, 146). Carbajal did not appeal the resentencing.

## III. STANDARD OF DECISION

"A federal prisoner challenging the legality of detention generally must do so by a motion pursuant to 28 U.S.C. § 2255." *Scaggs v. Ciolli*, 2023 WL 1879461, at *1 (9th Cir. February 10, 2023) (citing *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006)). Under § 2255, a prisoner in federal custody under sentence imposed by federal court, may collaterally attack the validity of his conviction or sentence by filing a motion to vacate, set aside or correct the sentence in the court that imposed the sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Section 2255 also enumerates the grounds upon which a sentencing court may grant the federal prisoner relief: "[u]pon the ground that [1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] . . . the court was without jurisdiction to impose such sentence, or [3] . . . the sentence was in excess of the maximum authorized by law, or [4] [the sentence] . . . is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see also United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023), *abrogated on other grounds by Fernandez v. United States*, 146 S. Ct. 1292, 1302 (2026), (quoting *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999)) ("Section 2255 grants a prisoner in custody the right at any time to bring a motion to vacate, set aside or correct the sentence upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law. . . .") (internal quotations omitted).

A successful § 2255 motion requires the federal prisoner to demonstrate the existence of an error of constitutional magnitude that "had a substantial and injurious effect or influence on the

guilty plea or [ ] jury's verdict" and show the error resulted in actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Section 2255 relief is only warranted where a movant shows the asserted "fundamental defect . . . inherently result[ed] in a complete miscarriage of justice." *See United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008); *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). "If the court finds . . . there has been . . . a denial or infringement of the constitutional rights of the prisoner . . ." (§ 2255(b)), the court must vacate and set the judgment aside, and then (1) discharge or resentence the prisoner, or (2) grant a new trial, or (3) correct the sentence. *Barron*, 172 F.3d at 1157 (quoting 28 U.S.C. § 2255) (internal quotations omitted)).

"Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief); *Neighbors v. United States*, 457 F.2d 795 (9th Cir. 1972) (affirming denial of § 2255 motion where the allegations regarding ineffective assistance of counsel were entirely conclusory and without support in the record).

## IV. DISCUSSION

Carbajal asserts that IAC by Forkner caused him to participate in two debriefing interviews with the government pursuant to a proffer agreement that ended up impeding Gohel's reasonable doubt defense at trial, and to involuntarily reject the favorable plea offer. (Doc. 150 at 4-8 [internal pagination]). Carbajal further asserts that Forkner was ineffective by abandoning him during the trial phase, leaving co-counsel Gohel to try the case alone.[2] (*Id.*).

[2] The Court need not and does not consider whether Carbajal's failure to raise IAC on direct appeal procedurally defaults these claims. *See USA v. Carbajal*, United States Court of Appeals for the Ninth Circuit Case No. 20-10025, Doc. 10 (Opening Brief), Doc. 32 (Reply Brief), Doc. 39-1 (Memorandum); *United States v. Hunt*, 2019 WL 5862393, at *7 (E.D. Cal. Nov. 8, 2019), *aff'd*, 2022 WL 9730780 (9th Cir. Oct. 17, 2022) (citing *Massaro v. United States*, 538 U.S. 500, 504-5, 509 (2003) (ineffective assistance of counsel claims may be heard on collateral review, even if a defendant could have, but failed to, bring the claim on direct appeal); see also *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993) (pre-*Massaro* case that held "Ineffective assistance of counsel constitutes 'cause' for failure to raise a challenge prior to section 2255

To prevail on claimed ineffective assistance of counsel, a defendant must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The law governing ineffective assistance of counsel claims is clearly established. *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir. 1998). In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 687.

First, "deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland*, 466 U.S. at 688). The defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *See Strickland*, 466 U.S. at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) (same). There is a strong presumption that counsel's performance fell within the "wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689; *Quintero-Barraza*, 78 F.3d at 1349; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994); *see also Premo v. Moore*, 562 U.S. 115, 125 (2011) ("[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage.").

Second, to demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' " *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *United States v. Leonti*, 326 F.3d 1111, 1120 (9th Cir. 2003) (same); *see also Moore*, 562 U.S. at 129 (quoting *Hill v. Lockhart,*

---

collateral review."); *United States v. Ratigan*, 351 F.3d 957, 964–65 (same). The government does not assert a procedural bar in the case. (See Doc. 169).

474 U.S. 52, 59 (1985)) (to prevail on prejudice in the context of a plea, defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

The two-part *Strickland* test applies to ineffective assistance of counsel claims relating to the plea negotiation process because under the Sixth Amendment criminal defendants are entitled to effective counsel during the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (The Sixth Amendment right to the effective assistance of counsel extends to the plea bargaining process, including the decision whether to accept or reject a plea offer); *Missouri v. Frye*, 566 U.S. 134, 144 (2012) (criminal defendants require effective counsel during plea negotiations). Generally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. Trial counsel also must adequately inform the defendant so that he has "the tools he needs to make an intelligent decision" regarding the plea offer. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002).

Counsel's advice is deficient when it was "so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." *Id.* at 880 (quoting *United States v. Day*, 969 F.2d 39, 43 (3rd Cir. 1992)). "[T]he question is not whether 'counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases.' " *Turner*, 281 F.3d at 880 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Counsel's ineffectiveness results from "gross error," not a failure to "accurately predict what the jury or court might find." *Turner*, 281 F.3d at 881. Counsel is not required to "discuss in detail the significance of a plea agreement," or "strongly recommend the acceptance or rejection of a plea offer." *Id*.

To show prejudice in the context of plea offers, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. In cases where trial counsel's defective advice caused the defendant to reject a plea offer and proceed to trial, prejudice is demonstrated where "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening

circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164. This is true even where the defendant subsequently received a fair trial. *Id.* at 166; *see also Moore*, 562 U.S. at 125.

The Ninth Circuit has stated: "If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." *United States v. Lester*, 2023 WL 113788, at *6 (E.D. Cal. Jan. 5, 2023) (citing *Leonti*, 326 F.3d at 1117)). Still, defense counsel is not "required to accurately predict what the jury or court might find." *Turner*, 281 F.3d at 881; *see also McMann*, 397 U.S. at 771 ("[U]ncertainty is inherent in predicting court decisions."). Nor is counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. *Turner*, 281 F.3d at 881. As the Ninth Circuit has observed, while counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." *Id.*

**A. Debriefing Interviews Pursuant to Proffer Agreement**

Carbajal claims that Forkner erred by allowing him to cooperate with the government by making statements relating to the charged Counts pursuant to the proffer agreement. Particularly, Carbajal contends the proffer agreement prevented Gohel from presenting at trial evidence and argument that Carbajal did not conspire and participate in the predicate robberies, particularly so in relation to Gohel's cross-examination of co-conspirator and cooperating government witness Kyle Clardy. (*See* Doc. 150 at 4-7, 16; sealed Doc. 155). Relatedly, Carbajal faults Forkner for allowing his associate attorney, Julissa Echeverri, to represent Carbajal at the debriefing interviews, where she "fail[ed] to limit" his statements. (Doc. 150 at 16 [internal pagination]; *see also id*. at 4-7, 14 [internal pagination]; ; *see also* sealed Doc. 155; Doc. 34 at 8-9).

But Carbajal has not pointed to facts or authority overcoming the presumption that a strategy of cooperation, in hopes of gaining the favorable plea deal that Carbajal sought, was a reasonable strategy at the time. Carbajal wanted to secure the best possible deal. (Doc. 150 at 10 [internal pagination]); Doc. 152-1 at 3); *see also Strickland*, 466 U.S. at 689 ("[a] court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance"); *Morrison*, 477 U.S. at 381 (same); *see also United States v. Smith*, 282 F.3d 758, 763 (9th Cir. 2002) ("L]itigation tactics are decisions generally left to defense counsel."). Carbajal claims he wanted to plead guilty and in fact signed the plea agreement in the wake of the debriefing interviews. (Doc. 150 at 10 [internal pagination]). Carbajal fails to explain how pursuit of this trial strategy that he himself then embraced, was unreasonable. Particularly so, as the plea offer was favorable, dismissing the remaining Count Three and recommending a sentence within the Guideline range and a downward variance for acceptance of responsibility.

Also, Carbajal has not explained with requisite specificity how Echeverri deficiently failed to limit his statements during debriefing. For example, Carbajal does not point to any statement that competent counsel would have limited in the context of the proffer agreement. Nor does he point to facts that Echeverri otherwise was not competent counsel. Notably, Carbajal's statements during the interviews were all counseled and subject to the proffer agreement's limited immunity. (Sealed Doc. 155).

Additionally, Carbajal's claim that the debrief interview statements and proffer agreement later limited Gohel's presentation of a reasonable doubt defense at trial is not a basis for ineffective assistance during the plea phase. Strategies in pursuit of an admission of guilt may well run counter to strategies contesting guilt at trial. *Strickland* considers the reasonableness of counsel's conduct at the time it occurs, not with the benefit of hindsight. *See United States v. Suris*, 625 F. Supp. 3d 1040, 1045 (C.D. Cal. 2022) (citing Strickland, 466 U.S. at 690) (Courts "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."); *Scott v. Broomfield*, 173 F.4th 1131, 1145 (9th Cir. 2026) (Counsel's performance must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct."); *Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009) (The court may neither second-guess counsel's decisions or trial strategy "nor apply the fabled twenty-twenty vision of hindsight.").

Even if Forkner acted deficiently as alleged, Carbajal has not pointed to facts showing prejudice. Carbajal does not argue much less point to facts that absent the allegedly deficient conduct relating to the proffer agreement's debrief statements, he would have pleaded guilty on terms

acceptable to the government and more favorable than those offered by the government in the case.

Additionally, Carbajal has not proffered facts that the allegedly deficient conduct relating to the proffer agreement's debrief statements prejudiced his reasonable doubt defense at trial. (*See* section IV C , post). Even if Gohel, absent the proffer agreement, could have elicited testimony from Clardy discrediting eyewitness identification of Carbajal as a participant in the Arbuckle robbery, Carbajal does not proffer facts raising a reasonable probability of a different result at trial. (*See Id.*) The government's case was strong, so much so that both Forkner and Gohel advised him that he was unlikely to prevail at trial. (*See Id.*) That Carbajal refrained from attributing IAC to Gohel (*see* Doc. 174 at 7 [internal pagination]), undermines, at least implicitly, his claim that Forkner was ineffective in relation thereto.[3] Carbajal's "[c]onclusory allegations which are not supported by a statement of specific facts" are not a basis for relief. *James*, 24 F.3d at 26.

**B. Rejected Plea Offer**

Carbajal claims that Forker's IAC caused him to involuntarily reject the government's plea offer and proceed to a trial he did not want. (Doc. 150 at 4-8; *see also* Doc. 152-1 at 4). Carbajal concedes that Forkner strongly advised him to accept the plea offer because if he did not, he would get 30 or more years in jail. (Doc. 152-1 at 3). Still, Carbajal contends Forkner failed to investigate the case and Clardy's participation in the charged crimes; failed to explain the plea agreement and plea versus trial option; and relatedly ignored Carbajal's serious learning disabilities, disabling illiteracy, and psychological issues, and disrespected him, all leading to rejection of the plea offer. (*Id.*).

As noted, the government offered a plea deal under which Carbajal would plead guilty to violating Count Two, 18 U.S.C. § 1951 [Hobbs Act Robbery] and Count Three, 18 U.S.C. § 924(c) [Use of a Firearm During and In Relation to a Crime of Violence or Drug Trafficking Offense], and agree to appellate and collateral attack waivers; the government would dismiss the remaining Count One, 18 U.S.C. § 1951 Conspiracy to Commit Hobbs Act Robbery, recommend a sentence within the

---

[3] The Court has not considered any allegations of IAC attributed to Gohel and raised for the first time in the Carbajal's reply to the opposition to the § 2255 motion. *See Nelson v. Doerer*, 2026 WL 1506797, at *3 (E.D. Cal. May 29, 2026) (collecting cases) (habeas claims raised for the first time in reply or traverse need not be considered).

Guideline range and downward variance upon acceptance of responsibility; and the parties estimated a nonbinding Guideline range of 176-219 months in custody. (Doc. 150-2). At the July 29, 2019 arraignment on the superseding indictment, Carbajal pleaded not guilty, rejecting the plea offer. (Doc. 82 at 7).

**1. Investigation of Kyle Clardy**

Carbajal argues that Forkner "failed to conduct proper investigation into Kyle Cardy to be able to meaningfully advice Carbajal as to the plea agreement." (Doc. 150 at 5 [internal pagination]). According to Carbajal, he warned Forkner that Clardy would be the government's star witness at trial and attribute his role in the crimes to Carbajal. Other than the alleged failure to investigate DNA comparisons, Carbajal does not suggest exactly what Forkner failed to investigate. (Doc. 150 at 16 [internal pagination]; Doc. 150-1 at 2).

Carbajal has not proffered facts overcoming the presumption the Forkner reasonably investigated the case, negotiating a plea agreement requested by Carbajal (which was reasonably informed by the debrief statements pursuant to the proffer agreement), and advised Carbajal on the plea versus trial option along with a recommendation that he plead guilty. This presumption benefits from Gohel's joinder in Forkner's advice, and that Carbajal does not assert IAC as against Gohel. (*See* section IV C, post).

For example, any suggestion that the plea negotiations and/or the reasonable doubt defense presented by Gohel at trial were tainted by Forkner's alleged IAC in relation to Clardy is supported only by speculation. (*See* section IV ante, section IV C, post). Even if Clardy's DNA contributed to evidence found at the Arbuckle crime scene, Carbajal has not pointed to facts that either he or Clardy was absent therefrom or a non-participant therein. Carbajal has not explained what else Forkner should have investigated relative to Clardy.

The record reflects that during the plea phase, all of Carbajal's questions relating to the plea agreement and plea versus trial option were answered and his requests for discovery were satisfied. (*Id.*) Nowhere does Carbajal point to facts that during the plea process, he requested or required information relating to Clardy's conspiring to participate in the robberies; or placing Forkner on notice of the need to investigate such matters. Instead, Clardy agreed to the factual basis for his plea

stated in the plea agreement. (*See* Doc. 150-2 at 13).

As noted, Carbajal's related claim that Forkner's alleged IAC limited Gohel's cross-examination and impeachment of Clardy at trial, fails for the reasons discuss above and below. (*See* section IV A, ante; section IV C, post). Even if Forkner was deficient as alleged, Carbajal falls short of showing prejudice at the plea phase. Carbajal has not argued much less pointed to facts that a competent investigation of Clardy would have resulted in a plea agreement acceptable to Carbajal, the government, and the Court.

**2. The Guilty Plea**

Carbajal argues that Forkner did not reasonably advise him as to the plea agreement and its consequences. According to Carbajal, Forkner failed to address unspecified acts which Carbajal did not want to admit, and failed to respond to Carbajal's unspecified questions and unspecified concerns about the plea agreement and its consequences. (*See* Doc. 150 at 10 [internal pagination]; Doc. 152-1 at 3-5). But these vague, self-serving, and conclusory allegations are refuted by the plea phase record.

For example, the record on change of plea shows Carbajal conceded that he was fully advised on the plea matter and was considering his decision. At the initial February 25, 2019, change of plea hearing, co-counsel Gohel informed the Court that Carbajal raised questions about the plea that counsel had yet to answer; Carbajal requested an extension of time for change of plea even though that might put any plea offer in jeopardy. (Doc. 80 at 2-4). During the subsequent March 11, 2019 change of plea hearing, Gohel stated that Carbajal had been provided with requested additional discovery; Carbajal confirmed that he "just needed some time." (Doc. 81 at 3-4). As noted, Gohel joined with Forkner in advising Carbajal on the proffered plea agreement and in recommending that Carbajal sign it.[4] (Doc. 169-1 at 5, 7).

The record reflects that Carbajal wanted a better deal. Gohel avers that Carbajal's sister, Maria Carbajal, texted him stating that Carbajal wanted more time to get a better deal. (Doc. 169-1 at 5). Gohel avers that he advised Carbajal and his sister that "the revised plea agreement is the best

[4] The Court previously observed that "Gohel, as co-counsel participated with Forkner in the allegedly deficient conduct including as to the plea offer, the decision to go to trial, and preparation of the trial defense." (Doc. 178 at 3 citing Docs. 16, 20, 38, 80 at 2-4, 81 at 2-4, 169-1).

possible resolution for [him] and that it would not be in his best interest to proceed to trial." (*Id.*). Gohel avers that he repeatedly told Carbajal that "based upon my review of the case, his chances at trial were not good, and that if he went to trial and be convicted he would likely receive a sentence of well over 20 years." (Doc. 169-1 at 5-6). While Carbajal ultimately signed the plea agreement, he directed counsel to hold it, pending his final decision, which turned out to be a not guilty plea. (Doc. 169-1 at 6).

Even while preparing for trial, Forkner and Gohel advised Carbajal to consider taking a plea. Gohel avers that he and Forkner later consulted on the case and discovery, and on more than one occasion they together met with Carbajal in jail to review the case and evidence and discussed the issues, defenses, and possible consequence of plea versus trial, and reiterated the view that a change of plea would be "a much better option than proceeding to trial." (Doc. 169-1 at 7). Gohel avers that days later, Carbajal "informed counsel that he wished to proceed to jury trial[.]" (*Id.*).

Carbajal goes on to fault Forkner for ignoring Carbajal's alleged mental, emotional, and/or learning impairments, leading to rejection of the plea agreement. According to Carbajal, these factors caused him to "shut down" and reject the plea. But as was the case above, the argument is only conclusory and speculative and belies the noted record. For example, apart from frequent bullying and harassment by other children at school, the 2019 PSR raised no such concerns or factors in mitigation. (Sealed Doc. 61; *see also* Doc. 136 at 12, 20). Though the PSR states Carbajal attended the special education program in school and did not complete high school (*id*. at 21; *see also* Doc. 136 at 22), the probation officer found no history of health problems or verified prescribed medications or anger management issues. (*Id*. at 20; *see also* Doc. 136 at 21-22). Significantly, the probation officer also found no evidence of any current or past mental health condition. (*Id*.). To the contrary, the PSR observed "the sophistication [Carbajal] displayed [during the crimes] by portraying himself as a police officer and having a pit-bull as a drug detection dog." (*Id*. at 5).

Carbajal suggests that Forkner's abusive advice and deprecating comments triggered or exacerbated these alleged mental state issues. He points to Forkner's alleged statements to the effect that Carbajal was "crazy" if he did not accept the plea deal as contributing to his alleged mental shutdown and plea rejection. (Doc. 152-1 at 4). But the claim finds no support in the plea phase

record, which shows Carbajal repeatedly engaged with counsel and the Court in a manner that belies the argument. For example, Gohel avers that he reviewed the plea agreement and revisions negotiated by Forkner personally with Carbajal at the jail on multiple occasions in early 2019, (Doc. 169-1 at 4), and that Forkner had previously reviewed the same plea agreement and revisions with Carbajal (*id*.). Carbajal's noted participation therein and at the plea change hearings does not suggest any mental issues or a mental "shutdown."

Carbajal also suggests in passing that Forkner's IAC caused a breakdown in the attorney-client relationship. According to Carbajal, Forkner's ineptitude "traumatiz[ed] his common law wife Eva Silva causing Silva to have a miscarriage[,]" destroying the attorney-client relationship and contributing to rejection of the plea offer. (Doc. 150 at 5-6; *see also* Doc. 152-1 at 4). But here again, the argument is vague, entirely conclusory, and inconsistent with the unrefuted plea phase record, as discussed above.

Contrary to Carbajal's assertion, this is not a case like *Lafler* where the parties conceded that counsel's recklessly abusive advice caused the defendant to be confused and proceed to trial. (*See* Doc. 150 at 15 [internal pagination] citing *Lafler*, 566 U.S. at 170); *see also Lafler*, 566 U.S. at 160, 162 (counsel's advised defendant of an incorrect legal rule). Here, Carbajal has not demonstrated deficient plea phase advice. Instead, having been fully informed on the plea and advised by both Forkner and Gohel to take a plea, Carbajal held out for a better offer that, as counsel predicted, never came. (*See* Doc. 169-1 at 5; *see also* Doc. 150-3 at 1; Doc. 81 at 3).

Even if Carbajal could show Forkner was deficient as to the guilty plea as alleged, he has not shown prejudice. Carbajal does not proffer facts that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

Significantly, nowhere does Carbajal identify terms upon which he rationally would have pleaded guilty. The noted record reflects only that he wanted a better deal than the government

offered. Moreover, Carbajal has not pointed to facts in the record that a plea bargained conviction and sentence would have been less severe than that imposed in the case. Under the plea agreement Carbajal signed, the sentencing Court retained discretion to impose the statutory maximum of sentence of 20 years in custody on Count Two and a mandatory maximum of 7 years in custody consecutive on Count Three – such that Carbajal's sentencing exposure was a total maximum of 324 months in custody. (Doc. 150-2 at 3, 8; Doc. 136 at 23). Following trial, Carbajal was initially sentenced to 292 months in custody. (Doc. 67; Doc. 150-10 at 3). Carbajal was resentenced to 274 months in custody. (Docs. 145, 146). Thus, Carbajal falls short of the standard set out in *Lafler*. *Id*.; *see also United States v. Brock*, 2019 WL 1455327, at *4 (E.D. Cal. Apr. 2, 2019), *report and recommendation adopted*, 2019 WL 2185190 (E.D. Cal. May 21, 2019) (citing *Turner*, 281 F.3d at 881) (self-serving statements alone are insufficient to establish constitutional violations because otherwise "every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer.").

**C. Ineffective Assistance at Trial**

Carbajal claims that Forkner's IAC, discussed above, caused co-counsel Gohel to present a deficient reasonable doubt defense at trial. (Doc. 150 at 16-17 [internal pagination]). Carbajal reprises his plea phase claim that his debrief interviews pursuant to the proffer agreement prevented Gohel from cross-examining Clardy so as to suggest Carbajal did not conspire in and participate in the December 4, 2016 robbery in Arbuckle. (*Id*.; *see also* Doc. 152-1 at 3). However, this claim fails for the reasons discussed above. (*See* sections IV A, IV B, ante); *see also Strickland*, 466 U.S. at 689 ("[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance); *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *United States v. Mazzei*, 2026 WL 1194920, at *4 (D. Haw. May 1, 2026) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal. . . .").

Also as discussed above, Carbajal does not contend Gohel was ineffective at trial, undermining any IAC claim relating to the trial phase. Moreover, Gohel aggressively presented the

reasonable doubt defense given the available evidence. For example, Gohel moved in limine to allow impeachment of government witnesses notwithstanding the proffer agreement. (*See* Doc. 30). Gohel regularly made evidentiary objections and elicited testimony going to the credibility of government witnesses and the weight of their testimony. (Docs. 81-83). During cross-examination of Clardy, Gohel elicited Clardy's prior felony convictions; his participation in the instant robberies; his guilty plea by agreement and per a cooperation agreement to Hobbs Act robbery; and his motivation in cooperating with authorities, potential bias toward authorities, and potential leniency in his pending sentencing. (*See* Doc. 53 at 40-79).

Even if Gohel had been able to cross-examine Clardy unconstrained by the proffer agreement, the line of questioning raised by Carbajal went only to the credibility of an Arbuckle victim's identification of Carbajal as the unmasked participant. (*Id.*; *see also* Doc. 51 at 46, 57). The trial record as a whole included the government's substantial evidence, including 16 witnesses and 77 exhibits, tying Carbajal to the superseding indictment including events in Turlock, Chowchilla, Rio Dell, Arbuckle, and Hollywood, in furtherance of the charged conspiracy and in relation to the robberies Carbajal led. (*See* Docs. 51-53, 61; *see also* Doc. 136). These events and searches of homes associated with Carbajal resulted in evidence of cash, drugs, weapons and ammunition, and body armor, consistent with the conspiracy's marijuana grower ripoff methodology. (Docs. 51, 52, 53, 61; *see also* Doc. 136). Evidence of Carbajal's DNA also was found at the Arbuckle crime scene. (Doc. 53 at 99-116).

Clardy testified that he was recruited by and participated with Carbajal in the 2015 Chowchilla robbery and the 2016 Arbuckle armed robberies using Carbajal's marijuana grow rip-off methodology. (Doc. 53 at 9-20). Clardy testified that at the Arbuckle robbery, Carbajal was armed; threatened victims with harm; hit the male victim in the head; took money, marijuana, and personal property; and paid Clardy for his participation. (*Id.* at 20-39).

Significantly, Gohel stated during arraignment on the superseding indictment that "[t]here is not going to be any evidence presented by us at trial that my client didn't do it[,]" subject to the government's burden of proof. (Doc. 82 at 4). Gohel rested the trial defense without presenting any witnesses. (Doc. 53 at 128).

**D. Abandonment at Trial**

Carbajal claims that Forkner "unilaterally walked away and abandoned my case, leaving attorney Gohel to try the case by himself. I was told that Forkner had another trial somewhere else." (Doc. 152-1 at 4). But as with the above claims, Carbajal offers only his conclusory allegation which is contradicted by the case record.

Notably, Carbajal states that he lost confidence and trust in Forkner, and instructed counsel that Gohel was to conduct the jury trial in place of Forkner. (Doc. 152-1 at 3-4; *see also* Doc. 169-1 at 7). Still, Forkner continued to consult with and advise Gohel on the case through trial. (*See* Doc. 169-1; *see also* Doc. 38). Nowhere does Carbajal point to facts in the record that Forkner discontinued or withdrew representation prior to or during the trial phase. That makes sense, as Gohel avers he was retained to assist Forkner, not replace him. (*See* Doc. 169-1 at 4).

According to Gohel, Forkner continued on the representation throughout trial, meeting and conferring with Gohel about discovery in the case, albeit Gohel would take the lead in the jury trial. (Doc. 169-1 at 7). Particularly, Gohel avers that "on numerous occasions [he] met and/or conferred with Mr. Forkner about the case and defense strategy to the conclusion of the jury trial." (Doc. 169-1 at 8).

Even if Carbajal could show Forkner was deficient by professional errors and abandonment at trial, he has not shown resulting prejudice. At no point was Carbajal denied the assistance of co-counsel Gohel, who continued to represent him through trial. Here again, the Court observes that Carbajal does not assert IAC as against Gohel, who presented the trial defense. Nor does Carbajal explain how, absent Forkner's alleged unprofessional errors and abandonment, there is a reasonable probability of a more favorable trial outcome. *See Strickland*, 466 U.S. at 694. Particularly so, given Carbajal's IAC allegations against Forkner, which reasonably undermine Carbajal's suggestion that Forkner's alleged absence from trial was prejudicial.

**E. Cumulative Prejudice**

Carbajal claims that Forkner's allegedly deficient conduct was individually and cumulatively prejudicial. (Doc. 150 at 6, 10-11, 16-17 [internal pagination]). The Ninth Circuit has described the standard for evaluating cumulative error on habeas as "determining whether the combined effect of

multiple errors rendered a criminal defense 'far less persuasive' and had a 'substantial and injurious effect or influence' on the jury's verdict." *United States v. Lee*, 2022 WL 36962, at *6 (E.D. Cal. Jan. 4, 2022), *report and recommendation adopted,* 2022 WL 799434 (E.D. Cal. Mar. 16, 2022) (citing *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007)) (quoting *Strickland*, 466 U.S. at 696)). But there cannot be cumulative error here. There is no individual error to cumulate, for the reasons discussed above. *Catlin v. Davis*, 2019 WL 6885017, at *89 (E.D. Cal. Dec. 17, 2019), *aff'd sub nom. Catlin v. Broomfield*, 124 F.4th 702 (9th Cir. 2024).

**F. Evidentiary Hearing**

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255); *see also United States v. Jaramillo*, 2025 WL 2462728, at *20 (E.D. Cal. 2025) (same). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022) (same). To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *McMullen*, 98 F.3d at 1159. "The Ninth Circuit's rule is that merely conclusory statements in a § 2255 motion are not enough to require a hearing." *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Therefore, the mere filing of a § 2255 motion does not automatically entitle a movant to a hearing if the issues can be conclusively decided on the basis of the evidence in the motion, files, and records. *Blackledge v. Allison,* 431 U.S. 63, 80-82 (1977); 28 U.S.C. § 2255(b); *see also United States v. Mejia–Mesa,* 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"); Habeas Rule 8(a) (the court must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Habeas Rule 7 to determine whether an evidentiary hearing is warranted); *Fontaine v. United States,* 411 U.S. 213, 215 (1973) (§ 2255 hearing required unless motion, files, and records

conclusively show movant is not entitled to relief). The district court exercises its discretion and common sense in determining whether a hearing is necessary. *U.S. v. Tate*, 523 F. Supp. 2d 165, 169 (D. Conn. 2007); *see also U.S. v. Martinez*, 475 F. Supp. 2d 154, 161 (D. Conn. 2007) (a district court is permitted to dispose of a motion to vacate without hearing where the case records demonstrate the movant's claims lack merit).

Here, the Court finds on the undisputed facts and record that Carbajal is not entitled to a § 2255 hearing because his claims of ineffective assistance of counsel are not cognizable. *United States v. Peterson*, 2025 WL 2780042, at *13 (E.D. Cal. Sept. 30, 2025) (movant is not entitled to a § 2255 hearing because his claims are not a basis for relief). The § 2255 motion may be denied as a matter of law, without a hearing. *See Leonti*, 326 F.3d at 1116 (defendant filing a motion to vacate is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief); *U.S. v. Rodriguez-Vega*, 797 F.3d 781, 791 (9th Cir. 2015) ("An oral hearing is not necessary in all cases."); *cf. United States v. Werle*, 35 F.4th 1195, 1202 (9th Cir. 2022) (evidentiary hearing necessary on § 2255 motion to determine factual questions underlying prejudice to overcome procedural default); *Iaea v. Sunn*, 800 F.2d 861, 865-66 (9th Cir. 1986) (remanding "for an evidentiary hearing to determine whether there is a reasonable probability Iaea would not have pled guilty absent counsel's erroneous advice"). Carbajal's "mere conclusory allegations do not warrant an evidentiary hearing." *See Shah*, 878 F.2d at 1161. Therefore, the Court finds that an oral hearing on the § 2255 motion is not necessary.

**G. Certificate of Appealability**

Pursuant to Habeas Rule 11, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." A court may issue a certificate of appealability where the moving party has made a substantial showing of the denial of a constitutional right, and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

The Court finds that Carbajal has not made a substantial showing of the denial of a constitutional right, for the reasons stated. Furthermore, based on the foregoing, Carbajal cannot

show "that jurists of reason would find it debatable whether the [§ 2255 motion states a valid claim of the denial of a constitutional right[.]" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

## V. ORDER

For the reasons stated, the Court **ORDERS**:

1. The 28 U.S.C. § 2255 motion filed on March 12, 2024 (Doc. 150) is DENIED.
2. A certificate of appealability **SHALL NOT** issue.
3. The Clerk of the Court is directed to enter judgment for the government and close the case.

IT IS SO ORDERED.

Dated: _August 17, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE